IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | CRIMINAL ACTION NO. 4:21-CR- |
| v. § | 00297-ALM-AGD |
| § | |
| EIDAR GABRIEL BARRERA RIVERA, § | |
| ET AL. | |

REPORT AND RECCOMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Pending before the court is Defendant Eidar Gabriel Barrera Rivera's Motion to Suppress Dual Interrogations ("Motion") (Dkt. #62). After considering the Motion, the Government's response (Dkt. #90), Defendant's reply (Dkt. #94), all other relevant filings, and the evidence and oral argument of counsel at the Hearing, the court recommends that Defendant's Motion be **DENIED**.

BACKGROUND

*Procedural Background*

On October 21, 2021, Defendant was indicted and charged with three counts: violation of 21 U.S.C. § 959 and 18 U.S.C. § 2, Manufacturing and Distributing Cocaine Intending and Knowing that the Cocaine Will Be Unlawfully Imported into the United States, Aiding and Abetting; violation of 21 U.S.C. § 963, Conspiracy to Import Cocaine and to Manufacture and Distribute Cocaine Intending and Knowing that the Cocaine Will Be Unlawfully Imported into the United States; and violation of 21 U.S.C. §§ 963 and 959(c)(2), Conspiracy to Distribute and Possess with the Intent to Distribute by Person on Board an Aircraft (Dkt. #1). On July 30, 2023, Defendant filed his Motion to Suppress Dual Interrogations, seeking to suppress Defendant's statements during interrogations by the Government for alleged *Miranda* violations on May 19, 2022, and alleged right to counsel violations on July 27, 2022

(Dkt. #62). On August 1, 2023, District Judge Amos Mazzant referred Defendant's Motion to the undersigned (Dkt. #69). On September 5, 2023, the Government filed its response to Defendant's Motion, arguing that Defendant's Motion should be denied because Defendant waived his *Miranda* rights and Defendant's counsel was present for the July interview (Dkt. # 90). On September 10, 2023, Defendant filed a reply (Dkt. #94). The court held a hearing on the Motion ("the Hearing") on September 12, 2023 (Dkt. #95). At the Hearing, Drug Enforcement Administration Agent Tiffany Klein testified on behalf of the Government. The Parties did not call any other witnesses. The court admitted the following exhibits:

    Government Exhibit 1: Signed Notification of Rights (Spanish Version)

    Government Exhibit 1A: Notification of Rights (English Version)

    Government Exhibit 2: Defendant's Representation Agreement (English and Spanish)

    Defense Exhibit 1: Affidavit of Defendant

    Defense Exhibit 2: Report of Investigation, July 28, 2022

    Defense Exhibit 3: Public Computer Access Log, Columbia, July 29, 2023

    Defense Exhibit 4: Report of Investigation, May 23, 2022

    Defense Exhibit 5: Justice Manual Policy 9-13.001 – Electronic Recording of Statements

    Defense Exhibit 6: Justice Manual Policy 9-13.200 – Communications with Represented Persons

    Defense Exhibit 7: Defendant's Representation Agreement (English and Spanish).

***Factual Background***

On May 19, 2022, Defendant was arrested in Columbia in connection with the seizure of forty-three kilograms of cocaine concealed in a flower box at the Mexico City airport. The stamp on the flower box indicated that the box was destined for Los Angeles, California. On the day of

Defendant's arrest, Defendant answered questions posed to him by DEA Agents Mike Claassen and Michael Jimenz at the La Picota jail in Bogota, Columbia. Defendant received and signed a written notification of his rights in English and Spanish prior to answering questions. Agent Klein stated that there was no indication that Defendant did not understand his rights.

On July 11, 2022, Defendant and Columbian attorney Tatiana Calderon Marquez signed a Representation Agreement (Government Exhibit 2; Defense Exhibit 7). On July 27, 2022, DEA Agents Max Mella and Michael Jimenz and Assistant United States Attorney Wes Wynne interviewed Defendant again while Defendant was awaiting extradition from Columbia. Calderon Marquez was in contact with the agents to coordinate the interview, was present for the interview, and held herself out as Defendant's attorney throughout the interview. The agents explained the purpose of the interview and the implications of the proffer agreement to Defendant. The agents allowed Defendant to consult with Calderon Marquez outside the presence of the agents. Agent Klein stated that there was no indication that Defendant did not understand the purpose of the interview or the proffer agreement.

On cross-examination, Agent Klein was questioned about procedures for recording interviews per the Justice Manual. Agent Klein testified that while the Justice Manual contains a presumption that interviews will be recorded as reasonable, the agents did not conduct the interviews at a DEA facility with the customary recording capabilities. Agent Klein did not know which facility the agents conducted the interviews, but she testified that policy generally prohibits agents from bringing phones or computers into interview rooms in Columbia.

## LEGAL STANDARD

In his Motion, Defendant argues that the Government committed two constitutional violations: agents interviewed Defendant allegedly in violation of his *Miranda* rights without Defendant having waived those rights and that agents interviewed Defendant purportedly without Defendant's attorney present (Dkt. #62 at 4).

The Fifth Amendment protects an individual's right to be free from compelled self-incrimination. Thus, at trial, the Government may use only confessions that are voluntarily made. 18 U.S.C. § 3501(a); *Malloy v. Hogan*, 378 U.S. 1, 7 (1964). To protect this right, the Government may not use statements obtained during a custodial interrogation of an accused unless the Government first advises the accused of his right to remain silent and right to counsel. *Miranda v. Arizona*, 384 U.S. 436, 473 (1966). The requirement to administer *Miranda* rights only arises if the accused is "in custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 444; *Stansbury v. California*, 511 U.S. 318, 322 (1994) (citation omitted). "[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

Persons under custodial interrogation may waive their Fifth and Sixth Amendment rights if they do so knowingly, voluntarily, and intelligently; only then may subsequent statements be admitted at trial. *Miranda*, 384 U.S. at 444; *see Missouri v. Seibert*, 542 U.S. 600, 608–9 (2004) ("Conversely, giving the warnings and getting a waiver has generally produced a virtual ticket of admissibility; maintaining that a statement is involuntary even though given after warnings and voluntary waiver of rights requires unusual stamina, and litigation over voluntariness tends to end with the finding of a valid waiver."). For a waiver to be voluntary, it must "be the product

of a free and deliberate choice rather than intimidation, coercion, or deception." *United States v. Cardenas*, 410 F.3d 287, 293 (5th Cir. 2005) (citations omitted). Additionally, "the waiver must have been made with an awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* The determination of voluntariness is based on a totality of the circumstances and made on a case-by-case basis. *Id.* To prove a valid waiver, the Government must show by a preponderance of evidence that the waiver of the defendant's rights was voluntary, the defendant was fully aware that the right was being waived, and the consequences of waiving that right. *Miranda*, 384 U.S. at 475; *Seibert*, 542 U.S. at 609 n.1 (citations omitted).

The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right…to have the Assistance of Counsel for his defense." U.S. CONST. AMEND. VI. The Sixth Amendment right to counsel attaches upon the initiation of adversarial judicial criminal proceedings. *Kirby v. Illinois*, 406 U.S. 682, 688 (1972); *United States v. Wade*, 388 U.S. 218, 237 (1967). Once the right attaches, the accused has the "right to have the assistance of counsel at his post-indictment interviews with law enforcement authorities." *Patterson v. Illinois*, 487 U.S. 285, 290 (1988). Additionally, the government may not interrogate an accused in the absence of counsel unless the accused voluntarily, knowingly, and intelligently waives his Sixth Amendment rights. *Id.* at 292–300. The accused must have a "a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* at 292 (quoting *Moran*, 475 U.S. at 421). While *Patterson* addresses waiver under the Fifth Amendment, it acknowledges that the standards are the same for a waiver of the Sixth Amendment. *Id.* at 296. ("As a general matter,…an accused who is admonished with the

5

warnings prescribed by this Court in *Miranda*…has been sufficiently apprised of the nature of his Sixth Amendment rights…").

## ANALYSIS

Having heard the evidence presented, the court finds that Defendant's statements to the agents were freely and voluntarily made. The Government offered both testimony and documentary evidence to show that Defendant was advised of his rights, Defendant indicated he understood those rights, and he knowingly waived them. The court additionally finds that because Defendant and Calderon Marquez were engaged in a Representation Agreement at the time of the July 27, 2022 interview, the Government did not violate Defendant's constitutional right to counsel.

### *The May 2022 Interview*

The core of Defendant's argument regarding the May 19, 2022 interview is that Defendant did not waive his *Miranda* rights before speaking with agents (Dkt. #62 at 2). At the outset, the court notes that neither party disputes that Defendant was subject to custodial interrogation when the agents questioned Defendant at La Picota jail in May and July 2022. *See Miranda*, 348 U.S. at 475; *Innis*, 446 U.S. at 301. As such, Defendant was entitled to either invoke his *Miranda* rights and decline to answer the agents' questions or waive his *Miranda* rights and agree to answer the agents' questions.

The Government met its burden to show that Defendant knowingly and voluntarily waived his *Miranda* rights. First, both the Report of Investigation from the May 2022 interview and Agent Klein's testimony at the Hearing support the conclusion that the agents advised Defendant of his *Miranda* rights before conducting the interview, and that Defendant knowingly and voluntarily waived those rights. In the Report of Investigation, the agents note that "BARRERA was advised

6

that he (BARRERA) was facing charges in the United States and was thus afforded rights as if he (BARRERA) had been arrested in the United States. See attached." (Defense Exhibit 4 at 1–2). The attachment, as explained by Agent Klein at the Hearing, was Defendant's signed Notification of Rights. The agents, in the Report of Investigation, go on to state that "[o]n the same date, at 2:09 PM, BARRERA acknowledged he (BARRERA) understood his rights and signed the Notification of Rights as witnessed by SA Claassen and SA Jimenez." (Defense Exhibit 4 at 2). Defendant makes an additional argument, alleging that agents should have recorded the May 2022 interview pursuant to Justice Manual § 9-13.001, and that "agents certainly have recording devices but choose not to use them so they can write down whatever they want in support of the prosecution." However, regardless of whether the Government violated § 9-13.001 by not recording the interview, the Government still met its burden to show that Defendant knowingly and voluntarily waived his *Miranda* rights.

Next, the contents of the Notification of Rights signed by Defendant also supports the conclusion that Defendant knowingly and voluntarily waived his *Miranda* rights.[1] The Notification of Rights contains unambiguous statements apprising Defendant of his right to remain silent and his right to an attorney (Government Exhibits 1, 1A). Following the statement of rights, the Notification of Rights includes this language: "If you are willing to make a statement and answer questions now, without an attorney present, please sign below. Your signature indicates that you have read this Notice of Rights (or someone has read this Notice of Rights to you), understand it, and agree to waive your rights." (Government Exhibits 1, 1A). The contents of the Notification of Rights indicates that Defendant had an "awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Cardenas*, 410 F.3d at 293.

---

[1] At the Hearing, Agent Klein testified that the English and Spanish versions of the Notification of Rights are identical.

Finally, there is no evidence that "intimidation, coercion, or deception" factored into Defendant's decision to waive his *Miranda* rights. *Cardenas*, 410 F.3d at 293. Thus, considering the totality of the circumstances, the court recommends that Defendant's Motion to Suppress be denied as it pertains to Defendant's statements during the May 2022 interview.

### *The July 2022 Interview*

As to the July 27, 2022 interview, Defendant argues that his Sixth Amendment right to counsel was violated because although Tatiana Calderon Marquez, a Columbian attorney, was present for the July 2022 interview, Calderon Marquez was purportedly not Defendant's attorney (Dkt. #62 at 3).

Calderon Marquez's presence at the July 2022 interview satisfied Defendant's right to counsel. On July 11, 2022, Defendant and Calderon Marquez signed a Representation Agreement, which stated in relevant part that Defendant wanted "Colombian lawyer Tatiana Calderon Marquez to act as my local lawyer in these proceedings and speak on my behalf." (Government's Exhibit 2). Moreover, Calderon Marquez assisted the agents in coordinating the July 2022 interview, and held herself out to the DEA agents as Defendant's attorney throughout the interview. The agents permitted Defendant to speak to Calderon Marquez outside of the agents' presence and permitted both Calderon Marquez and Defendant to ask the agents questions during the interview. Defendant never objected to or otherwise questioned the characterization of Calderon Marquez as Defendant's attorney. Because Defendant's attorney was present during the July 2022 interview, the government did not violate Defendant's Sixth Amendment right to counsel.[2]

---

[2] Defendant further argues that at the time of the July 2022 interview, the Columbian PACER system reflected that Defendant's attorney was Gustavo Enrique Montanez Rodriguez (Dkt. #62 at 2). Even if Calderon Marquez was a "surrogate lawyer" as Defendant claims, (Dkt. #62 at 4), Calderon Marquez had nonetheless signed a Representation Agreement with Defendant at the time of the July 2022 interview and held herself out as Defendant's attorney during the interview. The court also notes that whether an attorney is "problematic" is immaterial to the Sixth Amendment analysis. *See* (Dkts. #62 at 3; 94 at 2). Accordingly, the agents did not violate Defendant's constitutional rights by conducting the interview with Calderon Marquez present instead of Montanez Rodriguez.

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the court recommends that Defendant Eidar Gabriel Barrera Rivera's Motion to Suppress Dual Interrogations (Dkt. #62) be **DENIED**.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 24th day of January, 2024.**

AILEEN GOLDMAN DURRETT
UNITED STATES MAGISTRATE JUDGE