# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | § |
| | § |
| v. | §  No. 4:21-cr-00297(1) |
| | §  Judge Mazzant |
| EIDAR GABRIEL BARRERA RIVERA | § |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Mr. Barrera's Motion on Judgment of Acquittal Not Withstanding Verdict on Counts One and Two (Dkt. #229). Having considered the motion and the relevant pleadings, the Court finds that the motion should be **DENIED**.

## BACKGROUND

Defendant was charged with three counts in the First Superseding Indictment (Dkt. #153). Count One charged Defendant with knowingly and intentionally manufacturing or distributing five kilograms or more of cocaine intending, knowing, or with reasonable cause to believe that the cocaine would be unlawfully imported into the United States. Count Two charged Defendant with conspiracy to import cocaine and to manufacture or distribute cocaine intending, knowing, or with reasonable cause to believe that the cocaine will be unlawfully imported into the United States. Count Three charged Defendant with conspiracy to distribute and possess with the intent to distribute cocaine by person on board an aircraft.

A jury trial commenced on April 1, 2024. After the Government closed its case-in-chief, Defendant orally moved for a directed verdict[1] on Count Three of the First Superseding

---

[1] Also known as a judgment of acquittal under Federal Rule of Criminal Procedure 29(a).

Indictment. The Court orally granted the motion and dismissed Count Three against Defendant. Defendant did not put on any evidence, and the jury retired to deliberate. On April 5, 2024, the jury returned its verdict and found Defendant guilty as to Count One and guilty as to Count Two of the First Superseding Indictment.

On April 28, 2024, Defendant moved for judgment of acquittal as to Counts One and Two (Dkt. #229). On May 2, 2024, the Government filed a response (Dkt. #238). On May 8, 2024, Defendant replied (Dkt. #239).

**LEGAL STANDARD**

A Rule 29 motion for judgment of acquittal "challenges the sufficiency of the evidence to convict." *United States v. Medina*, 161 F.3d 867, 872 (5th Cir. 1998). The issue is "whether, viewing the evidence in the light most favorable to the verdict, a rational [finder of fact] could have found the essential elements of the offense charged beyond a reasonable doubt." *United States v. Boyd*, 773 F.3d 637, 644 (5th Cir. 2014) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Miller*, 588 F.3d 897, 907 (5th Cir. 2009)). "The standard does not require that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Loe*, 262 F.3d 427, 432 (5th Cir. 2001). The factfinder is "free to choose among reasonable constructions of the evidence," and "it retains the sole authority to weigh any conflicting evidence and to evaluate the credibility of the witnesses." *Id.* (quotations and citations omitted).

## ANALYSIS

Defendant moved for judgment of acquittal on Counts One and Two on the basis that "there was an insufficient amount of evidence for a jury to believe that [Defendant] knew or had cause to believe that the cocaine in this case was going to be imported into the United States or the scope of the transaction [was] beyond 1 or 2 kilograms" (Dkt. #229 at p. 3). Both Counts One and Two require Defendant to intend, know, or have reasonable cause to believe that the cocaine would be unlawfully imported into the United States (*see* Dkt. #224 at pp. 1–2). Defendant argues that, based on the evidence presented at trial, the Government "could only prove that the drugs were intended for Mexico City, and that is all [the Government] could prove that [Defendant] knew of or had reasonable cause to believe" (Dkt. #229 at p. 2). Defendant points out that the Government "presented a litany of evidence of agents, but not one single cooperating witness who could provide actual knowledge of facts that would tie the drug shipment to the United States" (Dkt. #229 at pp. 3–4). Defendant also claims that, because "Mexican cartels have to import [coca] to fulfill their orders from all over the world, . . .[and t]hus, most of the cocaine they are shipping to Europe comes from Colombia," the evidence presented by the Government does not support the jury's finding that Defendant intended, knew, or had reasonable cause to believe the cocaine would go to the United States (*see* Dkt. #229 at p. 3).

In response, the Government argues that the evidence is sufficient to establish Defendant intended, knew, or had reasonable cause to believe the cocaine would go to the United States because (1) the "evidence suggests the confiscated cocaine was to be directly transported to the United States," (Dkt. #238 at p. 7) and (2) even if a plan existed to offload the cocaine in Mexico

3

City, there was sufficient evidence "to show that the ultimate destination of the cocaine was the United States" (Dkt. #238 at pp. 7–8).

To establish Defendant intended, knew, or had reasonable cause to believe the cocaine was to be directly transported to the United States, the Government presented DEA agent testimony and admitted "approximately 80 recorded phone calls at trial," in large part "captur[ing] the [D]efendant and his co-defendants discussing the planning of the cocaine shipment that was eventually seized in Mexico City" (Dkt. #238 at p. 5). DEA Special Agent Max Mella also testified about his interview of the Defendant, where the Defendant "admitted to investing in the cocaine load that was eventually seized in Mexico City" (Dkt. #238 at p. 4). The Government contends that "[t]hese calls, along with [Defendant's] statements, show that [Defendant] was an active participant in the venture, who was cognizant of the plan's details, and had a vested interest in the success of the venture" (Dkt. #238 at p. 6). "In other words, he would have known that the flight was scheduled to depart Bogot[á], Colombia, and briefly stop in Mexico City, Mexico before continuing to its final destination of Los Angeles, California" (Dkt. #238 at p. 6).

To establish that the final destination of the cocaine was the *United States*, the Government presented evidence from multiple sources. First, the Government presented DEA Special Agents Bret Campbell and Carlos Giraldo who "testified that they had personal knowledge of the flight plan for Mas Air Flight #M7/6364, and that they were aware that the flight was only supposed to stop in Mexico City, Mexico for a short period . . . before continuing on to its final destination of Los Angeles, California" (Dkt. #238 at p. 7). Special Agent Giraldo also testified that "[a]ll pallets of materials, including the cocaine contaminated pallet[,] were scheduled to be delivered in Los Angeles" (Dkt. #238 at p. 7). The Government also presented Javier Muñoz Correa, head of

security for Aerosan[2], who "testified that every pallet on Mas Air Flight #M7/6364 was to be transported to Los Angeles, California, including Pallet #PMC73309R7" (Dkt. #238 at p. 7). The Government contends that the combined testimony of these witnesses "indicate[s] that it would have been logistically impossible to remove the cocaine in Mexico City, without first removing the pallet, which was on the place with several other pallets, none of which were scheduled to be removed in Mexico" (Dkt. #238 at p. 7). The Government also presented evidence regarding international drug trafficking that related to awareness of the cocaine's ultimate destination, including: (1) the typical drug routes between Colombia, the United States, and Europe, (2) the amounts of cocaine that typically get transported through certain locations, and (3) the "general understanding" of the members of drug trafficking organizations of drugs' ultimate destination based on the drug route used (*see* Dkt. #238 at p. 8). All this evidence, the Government argues, provides sufficient evidence of the guilty verdicts when viewed in the light most favorable to the verdict.

The Court finds the evidence presented was sufficient to support the guilty verdicts on Counts One and Two. Defendant's motion ultimately argues that the evidence presented does not establish beyond a reasonable doubt his intent, knowledge, or reasonable cause to believe that the cocaine would be unlawfully imported specifically into the United States. Viewing the evidence in the light most favorable to the verdict, the Court determines that the jury could find Defendant guilty of Counts One and Two based on that evidence. Defendant impliedly asserts that the

---

[2] Aerosan is the company "in charge of securing the cargo areas at El Dorado Airport in Bogot[á], Colombia" (Dkt. #238 at p. 7).

5

evidence presented proves not his intent, knowledge, or reasonable case to believe, but rather his lack thereof:

> The evidence actually shows, especially with the Government's failure to call codefendants, the more reasonable conclusion that a higher level cooperating defendant was arrested for the regular trafficking of drugs to Europe by this drug trafficking organization. Then, in exchange for leniency, he set up this controlled deal (as admitted by the agents) and [Defendant] took the bait not knowing or having cause that the drugs were intended to go to the United States. This is more than a reasonable hypothesis and sufficient to overturn the verdict along with the lack of evidence of knowledge and reasonable cause.

(Dkt. #239 at p. 2). The Court disagrees that Defendant's theory is *more than* a "reasonable hypothesis of innocence." *Loe*, 262 F.3d at 432. The Court views Defendant's theory as a reasonable hypothesis, and the jury "is free to choose among reasonable constructions of the evidence," provided that "the evidence establishes guilt beyond a reasonable doubt." *Id*. And the Court finds the evidence presented—the phone calls between Defendant and the co-defendants, and the witness testimony—supports the jury's guilty verdicts on Counts One and Two, when viewing the evidence in the light most favorable to the verdicts.

## CONCLUSION

It is therefore **ORDERED** Mr. Barrera's Motion on Judgment of Acquittal Not Withstanding Verdict on Counts One and Two (Dkt. #229) is hereby **DENIED.**

**IT IS SO ORDERED.**

**SIGNED** this 8th day of August, 2024.

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE